IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

R. M-G, as parent and next friend for A.R.,
a minor child,

        Petitioner-Appellant,

v.                                                                           CIV 13-0350 KBM/KK

LAS VEGAS CITY SCHOOLS and
THE BOARD OF EDUCATION FOR THE
LAS VEGAS CITY SCHOOLS,

        Respondent-Appellee.
================================
A.R., through his mother and next friend, R. M-G, and R. M-G,

        Plaintiffs,

vs.                                                               CIV 13-0720 KBM/KK

LAS VEGAS CITY SCHOOLS, THE SCHOOL
BOARD OF EDUCATION FOR THE LAS VEGAS
CITY SCHOOLS, SHERYL McNELLIS MARTINEZ,
in her official capacity as Superintendent of the Las Vegas
City Schools, and in her individual capacity; and
RICHARD ROMERO, LESLIE DAMON and
LORENA CASTRO-GARCIA, in their individual capacities,

        Defendants.
================================
LAS VEGAS CITY SCHOOLS and
BOARD OF EDUCATION FOR THE
LAS VEGAS CITY SCHOOLS,

        Petitioner-Appellant,

vs.                                                               CIV 13-0755 KBM/KK

R. M-G, as parent and next friend of minor child A.R.,

        Respondent-Appellee.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the Board of Education for the Las Vegas City Schools' Motion for Summary Judgment (*Doc. 111*) and Memorandum in Support of its Motion (*Doc. 112*) filed April 17, 2015, and fully briefed July 16, 2015 (*Doc. 137*). Pursuant to 28 U.S.C. § 636 and FED. R. CIV. P. 73, the parties have consented to me serving as the presiding judge, conducting all proceedings, including trial, and entering final judgment. *See Doc. 10*. Having considered the submissions of the parties and the relevant law, the Court will deny the motion.

I.   **Background Facts[1]**

During the 2012-2013 school year, A.R. attended Memorial Middle School, which is governed by the Board of Education for the Las Vegas City Schools (the "District"). A.R. is legally blind and cannot read print. In order to participate in the general curriculum at his school, A.R. requires special instruction and classroom materials in Braille, and his education is subject to an Individualized Education Program ("IEP").[2]

The IEP in effect during the time period at issue is dated May 12, 2012. The May 2012 IEP required, among other things, that A.R. receive a total of 20 hours per week of services by a Teacher of the Visually Impaired ("TVI"). Of the 20 hours, A.R. was to receive 4.2 hours of "Academic Success" time, which included direct instruction in Braille

---

[1] The facts are derived from Due Process Hearing Officer Yohalem's Findings of Fact (*Doc. 112-1*) which appear to not be in dispute.

[2] The Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 et seq., creates an "enforceable substantive right to public education." *Honig v. Doe*, 484 U.S. 305, 310 (1988) (citation omitted). Under the IDEA, students with disabilities are entitled to an individualized education program ("IEP"), 20 U.S.C. § 1401 (9)(D); 20 U.S.C. § 1414(d)(1)(A), and a parent may file a complaint and request a due process hearing when they believe their child is not receiving a free appropriate public education ("FAPE") pursuant to the IEP. *See* 20 U.S.C. § 1415.

and similar skills necessary to compensate for his disability. Ten hours was to be spent meeting with A.R's subject-matter teachers and planning modifications and accommodations. The other 5.8 hours was to be used assisting A.R. in the classroom and transcribing materials for him. Written objectives in the May 2012 IEP were directed at improving A.R.'s reading speed and fluency in Braille and expanding his knowledge of Braille forms used in academic subjects, including Nemeth code for mathematics, Spanish coding and punctuation, and literary Braille. Other objectives were aimed at improving his independent use of a variety of assistive technologies.

On December 13, 2012, A.R.'s TVI resigned. The District first replaced the TVI with a teaching assistant and then with a special education teacher; however, neither had any knowledge or understanding of Braille and could not teach A.R. how to use Braille or the assistive technology or transcribe A.R.'s assignments into Braille. Thus, from December 13, 2012, through the end of the school year in May 2013, A.R. did not receive instruction in Braille, Nemeth code, or the use of his assistive technology. In the absence of this instruction, A.R. failed to progress in these areas.

## II.     Procedural Posture

Respondent R. M-G, A.R.'s mother, was dissatisfied with the educational program and services the District was providing to accommodate A.R.'s disability. In November 2012, during A.R.'s sixth-grade year, R. M-G requested a special education due process hearing (DPH 1213-19) to remedy those concerns. Due Process Hearing Officer Barbara Albin ("DPHO Albin") held a four-day hearing beginning February 11, 2013. DPHO Albin submitted her final decision on March 15, 2013. *Doc. 83-1*.

A week later, on March 22, 2013, R. M-G filed a second request for a due process hearing (DPH 1213-36), which took place before Due Process Hearing Officer Jane Yohalem ("DPHO Yohalem"). DPHO Yohalem's decision addressed only the time frame between November 16, 2012, and May 31, 2013. DPHO Yohalem concluded that the District denied A.R. a FAPE after December 13, 2012, by failing to provide specialized instruction in Braille and in other compensatory access skills, Brailled text books in science and Spanish, assistive technology at home at no cost, and a qualified teacher that could provide services 20 hours a week. *Doc. 112* at 14-17.

Three separate lawsuits arose out of the circumstances surrounding A.R.'s education with the District:

- CIV 13-0350 KBM/KK, in which A.R. and R. M-G appealed DPHO Albin's final decision and requested attorney's fees for the first due process hearing[3];
- CIV 13-0755 KBM/KK, in which the District appeals DPHO Yohalem's final decision; and
- CIV 13-0720 KBM/KK, in which A.R. and R. M-G filed a civil rights action against the District and requested attorney's fees for the second due process hearing.

The Court has consolidated these cases. *Doc. 27*.

The instant motion addresses CIV 13-0755 KBM/KK and DPHO Yohalem's final decision. The District contends that DPHO Yohalem's "legal conclusions were issued in error and derived from other subaltern erroneous legal determinations concerning a single fact: On December [13], 2012, the District's TVI resigned from her position with the District." *Doc. 112* at 8.

---

[3] The issues in CIV 13-0350 KBM/KK have been addressed by this Court.

### III. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores*, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must consider the record, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-party's favor. *Id.* at 670.

If there is no genuine issue of material fact, the Court must still determine whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. "A moving party is 'entitled to a judgment as a matter of law' where the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317-18, (1986) (internal quotation and citation omitted).

The analysis of a motion for summary judgment in the context of the IDEA is somewhat more refined.

> In reviewing a challenge under the IDEA, the district court engages in a modified de novo review, in which it must independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below.

*Erickson v. Albuquerque Public Schools*, 199 F.3d 1116, 1120 (10th Cir. 1999).

5

## IV. Statement of Undisputed Material Facts

In the District's "Statement of Relevant Undisputed Material Facts," it sets out several of DPHO Yohalem's Conclusions of Law. *Doc. 112* at 5- 7. Plaintiffs do not dispute the substance or source of these conclusions. *Doc. 128* at 8. In their response, Plaintiff's iterate several of DPHO Yohalem's factual findings that are undisputed by the District. *Doc. 128* at 5–8; *Doc. 136*. As there is no genuine issue of disputed fact, the only issue left for the Court is whether the District is entitled to judgment as a matter of law.

## V. Discussion

In *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176 (1982), the Supreme Court set forth the two-part inquiry in suits brought under the IDEA:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Id.* at 206-07.

The District maintains that since DPHO Yohalem determined that A.R.'s May 12, 2012 IEP was reasonably calculated to enable him to make educational progress, "her inquiry should have been strictly limited to determining whether the district complied with IDEA procedures." *Doc. 112* at 8. The Court disagrees. The Tenth Circuit has recognized that, "an IEP is a program, consisting of both the written IEP document, and the subsequent implementation of that document." Consequently, "the implementation of the

program is an on-going, dynamic activity, which obviously must be evaluated as such." *O'Toole By and Though O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. 233*, 144 F.3d 692, 702 (10th Cir. 1998).

The District raises three concerns that incorporate both procedural and substantive aspects of whether it complied with the requirements of the IDEA. The District contends that DPHO Yohalem's conclusions of law are erroneous because the District maintained A.R.'s educational placement, it implemented all material portions of A.R.'s IEP, and it did not eliminate Braille instruction from the IEP, despite the resignation of the TVI.

### A. The District Failed to Maintain A.R.'s Educational Placement

The IDEA does not define "educational placement." *See* 20 U.S.C. § 1415(b)(1).[4] In *Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751 (1980), cited by the District, the Second Circuit found that the IDEA referred to "educational placement" as "the general educational program in which the handicapped child is placed" and did not include "all the various adjustments in that program that the educational agency, in the traditional exercise of its discretion, may determine to be necessary." *Id.* at 756. Accordingly, the Second Circuit found that the

---

[4] 20 U.S.C.A. § 1415 states in pertinent part:

(b) Types of procedures

The procedures required by this section shall include the following:

(1) An opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child.

7

disabled students' educational placement did not change when they were transferred from one school to another because they remained in "the same classification, the same school district, and the same type of educational program special classes in regular schools." *Id.*

The Tenth Circuit has adopted a narrower view: "An educational placement is changed when a fundamental change in, or elimination of, a basic element of the educational program has occurred." *Erickson v. Albuquerque Pub. Sch.*, 199 F.3d 1116 (10th Cir. 1999) (citing *Sherri A.D. v. Kirby*, 975 F.2d 193, 206 (5th Cir. 1992)). In *Erickson*, the school district eliminated hippotherapy, a type of occupational therapy involving horses, and replaced it with a different occupational therapy aimed at the goals listed in the student's IEP. The court found that the school district did not violate the IDEA because the substituted therapy addressed the same therapy issues as the hippotherapy and, therefore, did not change a basic element of the student's educational program. *Id.* at 1122. Similarly, in *Sherri*, the Fifth Circuit found that the school district did not violate the IDEA by requiring the student to be removed from a residential program and placed in a community program which would provide her with educational services "from which she will be able to obtain educational benefit." *Sherri*, 975 F.2d at 207.

Here, after the resignation of the TVI, A.R. was no longer receiving specialized instruction in how to read and write in Braille or use his assistive technology. Instead, the teacher's assistant and special education teacher would read A.R.'s assignments to him and have him speak his responses.

Consider if a teacher stopped teaching a sighted child to recognize letters and

written words, but only read assignments to the students. There is no question that change would be a fundamental change in, or elimination of, a basic element of that sighted child's educational program. While reading aloud to a child is beneficial to a child's education, teaching a child letters and words is fundamental to a child's ability to read, write, and learn independently.

Likewise, learning Braille is fundamental to a visually impaired child's ability to read, write, and learn independently. Yet the District would have this Court find that:

[5]

Without the benefit of a qualified instructor, A.R. was unable to progress in his ability to read, write, and learn independently using Braille. Therefore, unlike the students in *Erickson* and *Sherri*, the District's failure to hire a qualified TVI during the Spring of 2013 created a fundamental change in, or elimination of, a basic element of A.R.'s educational program and the District thereby failed to maintain the student's educational placement.

---

[5] It would be a challenge indeed to read the forgoing without the assistance of years of specialized instruction in Braille. Translation using http://www.euroblind.org/resources/braille-converter/ ("Reading out loud does not constitute a fundamental change from providing material and instruction in Braille.").

**B. The District Failed to Implement All Material Portions of A.R.'s IEP.**

"[W]hen a school district does not perform exactly as called for by the IEP, the district does not violate the IDEA unless it is shown to have materially failed to implement the child's IEP. A material failure occurs when there is more than a minor discrepancy between the services provided to a disabled child and those required by the IEP." *Van Duyn ex rel Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811, 815 (9th Cir. 2007).

A.R.'s IEP required 4.2 hours a week of Braille instruction. During the Spring semester of 2013, he was not receiving this instruction from the teacher's assistant or special education teacher. The District argues that there is no legal support for DPHO Yohalem conclusion that A.R.'s IEP required a specific type of teacher. A particular instructor, program, or location may be interchangeable with another as long as the substitution conveys a sufficient educational benefit to the student. *See, e.g., Erickson*, 199 F.3d at 1122; *Sherri,* 975 F.2d at 207. However, the circumstances of this case required a teacher with specialized knowledge and understanding of how to teach Braille, transcribe lessons into Braille, and instruct on the use of assistive technology. There is no dispute that the teacher's assistant and the special education teacher could not perform these tasks.

Further, A.R.'s lack of progress is probative of the District's failure to implement a material portion of his IEP. In *Van Duyn*, the Ninth Circuit explained:

> [T]the materiality standard does not require that the child suffer demonstrable educational harm in order to prevail. However, the child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided. For instance, if the child is not provided the reading instruction called for and there is a

>shortfall in the child's reading achievement, that would certainly tend to show that the failure to implement the IEP was material.

502 F.3d at 822.

It is undisputed that in the absence of a TVI, A.R. failed to make progress in Braille and other compensatory access skills, and in some instances, his skills actually declined. The District's failure to hire a qualified instructor was more than a minor discrepancy between the services provided and those required by the IEP.

### C. The District's Provision of Braille Instruction

The District points out that the requirement in A.R.'s IEP that he be provided with services for Braille instruction was never eliminated and there was only "an interruption in the provision of specific services that the particular TVI was providing to the student." *Doc. 136* at 9. While the document itself did not change, the District's "stop gap" solution was not reasonably calculated to enable AR to receive educational benefits, as discussed above. Moreover, as the Hearing Officer admonished, "[i]f the recruiting budget must be expanded to ensure that a FAPE can be provided or a salary increased to attract a qualified applicant, this must be done." *Doc. 112-1* at 24. Instead, the DPHO found that the District had "delayed or not taken steps that experts in the field recommend as effective ways of recruiting staff." *Id.* at 23-24.

### VI.   Conclusion

There is legal support for DPHO Yohalem's conclusions that A.R. was denied a FAPE during the 2013 Spring semester based on the District's failure to replace the TVI with a qualified instructor and, therefore, the District is not entitled to judgment as a matter

of law.

Wherefore,

**IT IS ORDERED** that the Board of Education for the Las Vegas City Schools' Motion for Summary Judgment is denied.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent