IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

R. M-G, as parent and next friend for A.R.,
a minor child,

        Petitioner-Appellant,

v.                                                                                     CIV 13-0350 KBM/KK

LAS VEGAS CITY SCHOOLS and
THE BOARD OF EDUCATION FOR THE
LAS VEGAS CITY SCHOOLS,

        Respondent-Appellee.
-----------------------------------------------------------------
A.R., through his mother and next friend, R. M-G, and R. M-G,

        Plaintiffs,

vs.                                                                               CIV 13-0720 KBM/KK

LAS VEGAS CITY SCHOOLS, THE SCHOOL
BOARD OF EDUCATION FOR THE LAS VEGAS
CITY SCHOOLS, SHERYL McNELLIS MARTINEZ,
in her official capacity as Superintendent of the Las Vegas
City Schools, and in her individual capacity; and
RICHARD ROMERO, LESLIE DAMON and
LORENA CASTRO-GARCIA, in their individual capacities,

        Defendants.
-----------------------------------------------------------------
LAS VEGAS CITY SCHOOLS and
BOARD OF EDUCATION FOR THE
LAS VEGAS CITY SCHOOLS,

        Petitioner-Appellant,

vs.                                                                              CIV 13-0755 KBM/KK

R. M-G, as parent and next friend of minor child A.R.,

        Respondent-Appellee.

## MEMORANDUM OPINION AND ORDER

        THIS MATTER comes before the Court on Petitioner's Motion for Summary

Judgment on Petition for Attorney's Fees and Motion for Attorney's Fees Incurred in Responding to Respondent's Petition for Judicial Review and Memorandum in Support (*Doc. 148*). Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 73, the parties have consented to me serving as the presiding judge, conducting all proceedings, including trial, and entering final judgment. *See Docs. 10, 11, 12*. Having considered the submissions of the parties and the relevant law, the Court will grant the Motion in part.

## I.     Background Facts and Procedural Posture

A.R., who is legally blind, attended Memorial Middle School, which is governed by the Board of Education for the Las Vegas City Schools ("the District"), during the 2012-2013 school year. During that time A.R. was subject to an Individualized Education Program ("IEP") under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq.*[1] A.R.'s IEP, dated Mary 12, 2012, required that he be provided with the services of a Teacher for the Visually Impaired ("TVI") for a total of 20 hours per week. *Doc. 112-1* at 5. Of the 20 hours, A.R. was to receive 4.2 hours of "Academic Success" time, which included direct instruction in Braille and other compensatory access skills. *Id.* Ten hours were to be spent meeting with A.R.'s subject matter teachers and planning modifications and accommodations to give him access to the instruction and materials used in his subject matter classes. *Id.* The other 5.8 hours were to be used to assist A.R.

---

[1] The Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, creates an "enforceable substantive right to public education." *Honig v. Doe*, 484 U.S. 305, 310 (1988) (citation omitted). Under the IDEA, students with disabilities are entitled to an individualized education program ("IEP"), 20 U.S.C. § 1401 (9)(D); 20 U.S.C. § 1414(d)(1)(A), and a parent may file a complaint and request a due process hearing when they believe their child is not receiving a free appropriate public education ("FAPE") pursuant to the IEP. *See* 20 U.S.C. § 1415.

in his regular classes or to transcribe materials for his regular classes. *Id.* A.R.'s IEP also provided for 1 hour per week of Orientation and Mobility Services. *Id.* at 6.

Specific services to be provided to A.R. included: support in math and science classes by a TVI; production of math materials by a TVI; one to one instruction in literary Braille and Nemeth Code (a special form of Braille used for math); improvement to grade level in Braille reading fluency; one to one instruction in the use of assistive technologies; and modifications and accommodations to his core curriculum. *Id.* The IEP also recognize A.R.'s need for Braille material and textbooks as well as other equipment such as an Apex (a machine that translates text into Braille and Brailed input in to text). *Id.* at 7. A.R. was to be allowed to complete his homework with the Apex. *Id.*

After the IEP meeting, A.R.'s TVI developed objectives for him. *Id.* These objectives were primarily directed at assisting A.R. learn Braille skills to improve his reading speed in Braille, to improve his ability to fluently read contracted Braille, "and to expand his knowledge of the specialized Braille forms" used in math, Spanish, literary Braille, and punctuation and formatting. *Id.* A.R.'s TVI furthermore sought to improve A.R.'s use of the assistive technologies provided to him. *Id.* It was also recommended that A.R. be provided with a GPS device to assist with his orientation and mobility skills. *Id.* at 8.

Unfortunately, A.R.'s TVI resigned on December 13, 2012. *Id.* at 8. The District did not hire a replacement TVI, but instead utilized a teaching assistant, and later a special education teacher, neither of whom had any knowledge of Braille or of the technology or services contemplated by A.R.'s IEP. *Id.* As a result, from December 13, 2012, through

3

the end of the school year A.R. "did not receive any specialized instruction toward his IEP goals and objectives aimed at teaching him skills necessary to compensate for his disability." *Id.* Instead, his IEP goals "all went by the wayside." *Id.*

R. M-G, A.R.'s mother, requested a special education due process hearing to remedy these concerns. Two hearings were held, DPH 1213-19 and DPH 1213-36. The first hearing, DPH 1213-19, addressed the mother's concerns leading up to November 15, 2012, and was held before Due Process Hearing Officer Barbra Albin ("DPHO Albin"). However, because her concerns related to A.R.'s education between November 16, 2012, and the remainder of the school year remained unaddressed, R. M-G requested a second due process hearing.

The second hearing, DPH 1213-36, took place before Due Process Hearing Officer Jane Yohalem ("DPHO Yohalem"). Before DPHO Yohalem, the mother asserted that the District denied A.R. a free appropriate public education ("FAPE") by: (1) failing to implement his IEP; (2) by failing to provide specialized instruction and services through a TVI after A.R.'s TVI resigned; (3) by not providing A.R. instruction in Braille; (4) by not providing A.R. with Braille textbooks in all subjects; (5) by not providing other class materials in Braille; (6) by not providing A.R. with instruction in the use of assistive technology; (7) by not allowing A.R. to take school-owned assistive technology devices home; (8) by not providing adequate Orientation and Mobility services; and (9) by not providing A.R. appropriate social work services. *Id.* at 2-3. R. M-G also asserted that that the District's decision not to allow A.R. to take school-owned assistive technology devices home was done in retaliation for R. M-G's pursuit of her rights under the IDEA. *Id.* at 3.

4

DPHO Yohalem found that R. M-G failed to establish that A.R. was denied a FAPE from November 16, 2012, through December 13, 2012. *Id.* at 15. However, she concluded that A.R. was denied a FAPE from December 13, 2012, through the end of the school year. *Id.* Most importantly, DPHO Yohalem found that the District had failed to provide any specialized instruction in Braille and other compensatory access skills which were "central to [A.R.]'s IEP" by neglecting to hire a qualified TVI to administer those services. *Id.* at 15, 20. She further found that A.R. was denied a FAPE by the District's failure to provide Brailled textbooks in science and Spanish; because he was not provided with a GPS device; and because he was not allowed to take assistive technologies home with him. *Id.* At 16-17. However, DPHO Yohalem found that the social services provided to A.R. were adequate and that there was no evidence that the District's refusal to allow A.R. to take his Apex home was retaliatory. *Id.* at 17.

Thus, in all, DPHO Yohalem found in R. M-G's favor as to eight of the nine claims. As remedial relief, DPHO Yohalem ordered the District to arrange and pay for an independent comprehensive reevaluation of A.R. by the New Mexico School for the Blind; to contract with an expert to find a replacement TVI and ensure that A.R.'s textbooks were adequate; to pay for a compensatory education in the form of a comprehensive summer camp program with an emphasis on Braille; to contract with a professional certified Braille transcriber to transcribe materials for A.R.; to provide an appropriate GPS device to A.R.; and to permit A.R. to take the Apex home to do his homework. *Id.* at 27-29.

Three lawsuits arose from the circumstances outlined above. In CIV 13-350, R. M-G appealed certain aspects of DPHO Albin's decision and requested her attorney's

5

fees for DPH 1213-19 ("first hearing"). This Court found R. M-G's to be the prevailing in that hearing and accordingly awarded her attorney's fees. *See generally Doc. 94.* In CIV 13-720, R. M-G brings civil rights claims against the District, and she also requests her attorney's fees incurred for DPH 1213-36 ("second hearing") before DPHO Yohalem.

Finally, in CIV 13-0755 the District appealed DPHO Yohalem's findings; however, this Court upheld her decision in all of the respects challenged by the District. *See generally Doc. 144.* R. M-G's present motion now seeks her attorney's fees for the second hearing before DPHO Yohalem which became ripe only after a ruling on the District's appeal and attorney fees for defending that appeal.

## II. Analysis

In any action brought under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Determining a reasonable award of attorney fees is a two-step process. *See Morrison v. Los Lunas Public Schools, et al.*, CIV 12-0143 JCH/RHS, Doc. 60 (November 24, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995)). The Court must first determine whether an applicant is a prevailing party entitled to the reimbursement of her fees and, if this threshold is crossed, the Court must then determine the amount of a reasonable fee. *Id.*

### A) Prevailing Party

The term "prevailing party" means the same under the IDEA as it does under 42 U.S.C. § 1988. *Fowler v. Unified Sch. Dist. No. 259, Sedgwick County, Kan.*, 128 F.3d

6

1431, 1439 (10th Cir. 1997) (citing *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 728-29 (10th Cir. 1996). Under the IDEA, "the parents prevail 'when actual relief on the merits of the child's claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Miller ex rel. S.M. v. Board of Educ. of Albuquerque Public Schools*, 565 F.3d 1232, 1247-48 (10th Cir. 2009) (quoting *Urban by Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 728 (10th Cir. 1996)). This does not require success on all issues; rather, a parent must only prevail on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. Moreover, "[w]hether a party prevails is ultimately an exercise of judgment that is fundamentally qualitative, not quantitative." *Sinajini v. Board of Educ. of San Juan School Dist.*, 233 F.3d 1236, 1242 (10th Cir. 2000).

The District's brief spends significant time reciting the law on what constitutes a prevailing party and "limited success" on the issues and points out that DPHO Yohalem found that the District met its FAPE obligations for a one-month period. After reviewing the totality of issues raised and relief granted, however, the Court finds that R. M-G clearly prevailed both before DPHO Yohalem in the second hearing and in defending the District's appeal of her decision in CIV 13-0755. DPHO Yohalem's award of significant remedial relief to R. M-G, as noted above, supports this finding. *See also Doc. 112-1* at 27-29. That relief materially altered the legal relationship between the parties in a way that provided direct benefits to A.R. Furthermore, this Court upheld all of DPHO Yohalem's findings when considering the District's appeal. *Doc. 144.* Accordingly, R. M-G is the prevailing party for the purposes of 20 U.S.C. § 1415(i)(3)(B)(i)(I).

7

**B) Reasonable Attorneys' Fees**

A finding that the parent is the prevailing party does not end the fees inquiry, as "[a]n award of attorney's fees must also be reasonable." *Urban*, 89 F.3d at 729 (citing *Farrar v. Hobby*, 506 U.S. 103, 113-16 (1992)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonable expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433 (1083). This is known as the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case v. Unified Sch. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)). After exercising billing judgment, R. M-G asserts that her attorneys have expended a total of 429.9 hours at a rate of $375 per hour totaling $159,896.94 in attorney's fees, gross receipts tax, and costs for the due process hearing before DPHO Yohalem and in defending against the District's appeal. *Doc. 148* at 12.[2]

   *i.   Reasonable Hourly Rate*

A "reasonable hourly rate" for fees awarded under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). In setting a reasonable hourly rate, the Court looks to "what lawyers of comparable skill and experience practicing in the

---

[2] While the Court's own review of the numbers presented by R. M-G results in a different calculation, any discrepancies will be addressed in the final fee amount.

area in which the litigation occurs would charge for their time." *Case*, 157 F.3d at 1256.

Both Ms. Simmons and Ms. Poulin assert that they are entitled to an hourly rate of $375 per hour for their work before DPHO Yohalem and in defending the District's appeal. Ms. Simmons, however, only requests a rate of $250 per hour for the preparation of R. M-G's motion for attorney's fees. *Doc. 148* at 11, 25. Based in part on this concession and the previous award of fees to Ms. Poulin for work expended for the hearing before DPHO Albin, the District argues that $250 is an appropriate hourly rate. *Doc. 155* at 13. The District also proffers the affidavit of attorney Karen Kilgore, who states that the highest rate she has charged in a plaintiff's case is $250 per hour. *Doc. 155-1* at 2.

To her reply brief, R. M-G attaches the affidavit of attorney Phillip Davis who opines that the requested rate of $375 per hour is reasonable given Ms. Simmons and Poulin's respective years of experience. *See Doc. 162-1* at 5. Ms. Simmons has been licensed to practice law since 1984. *Doc. 148-1* at 2. She has litigated many cases before this Court focusing primarily on the representation of children and adults with developmental disabilities. *Id.* Ms. Poulin has been licensed to practice law since 1988. *Doc. 162-1* at 4. Mr. Davis states that he knows "of no other lawyer in New Mexico with Ms. Poulin's skill and experience handling special ed due process cases[.]" *Id.* at 5. Nor does the district dispute that these two attorneys are "among a small bar of New Mexico attorneys who frequently represent children with disabilities in special education and/or developmental disabilities litigation." *Doc. 148* at 11-12.

Despite their experience and the specialized nature of their work, neither attorney has previously been awarded the $375 per hour rate they now request. This is significant,

9

as awards in similar cases are one of the factors district courts may consider in calculating attorneys' fees. *Sinajini v. Bd. of Educ. of San Juan County Sch. Dist.*, 53 F. App'x 31, 37 (10th Cir. 2002) (unpublished). In 2006, Magistrate Judge Garcia awarded Ms. Poulin $195 per hour and Ms. Simmons $225 per hour. *Pena v. Belen Consolidated Schools et al.*, CIV 04-1352 LFG/RLP, Doc. 38 (D.N.M. January 9, 2006); *id.*, Doc. 56 (D.N.M. April 3, 2006). In late 2014, District Judge Herrera awarded Ms. Poulin $235 per hour in *Morrison v. Los Lunas Public Schools et al.*, CIV 12-0143 JCH/RHS, Doc. 60 (D.N.M. November 24, 2014). And in 2015, Judge Herrera awarded Ms. Simmons $235 per hour in the *Morrison* case at Doc. 65 (D.N.M. September 23, 2015). Finally as noted earlier, just last year this Court awarded Ms. Poulin $250 per hour for her work at the first hearing before DPHO Albin. *Doc. 94* at 6.

R. M-G asserts that these prior hourly rates are not binding on the present fee request because they were self-selected, and are actually below the market rate for attorneys with Ms. Simmons and Ms. Poulin's level of skill and experience. *See Doc. 162* at 10. Still, given that the highest amount awarded to either of these attorneys by this Court is $250 per hour, it is R. M-G's burden to show why the substantial upward departure of $125 per hour is reasonable. R. M-G has met this burden to a degree by the proffer of Phillip Davis' affidavit. *See Doc. 162-1*. Mr. Davis opines that a litigator with more than 25 years of experience should earn between $350-375 per hour and a lawyer with closer to 30 years of experience earns closer to $375-$400 per hour. *Id.* at 6. These rates appear consistent with the upper bounds of awards in this district. *See Chavez v. Chavez*, CIV 13-1047 JAP/SCY (D.N.M. April 20, 2015) (awarding a rate of $375 per hour

10

to attorneys with 34 years of experience); *Valdez v. Herrera*, CIV 09-0668 JCH/DJS, Doc. 149 at 3 (D.N.M. March 21, 2011) (awarding "$350 per hour for lawyers who graduated from law school before 1996"); *Storey v. Garcia*, CIV 08-0207 JCH/LAM, Doc. 125 (D.N.M. September 1, 2011) (awarding an attorney with over 20 years of experience a rate of $310 per hour); *Jackson v. Los Lunas Ctr.*, 489 F. Supp. 2d 1267, 1275 (D.N.M. 2007) (Parker, J.) (recognizing that the hourly market rate for an experienced attorney as $250-275 per hour in 2007). However, as recognized above, Mr. Davis' asserted rates are substantially higher than any award to these attorneys in recent IDEA cases.

"It goes without saying that if a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere to offer their services." *Robinson*, 160 F.3d at 1281. After considering the submitted affidavits, prior awards to these attorneys, and awards in other cases, the Court concludes that the market rate for the work performed by Ms. Poulin and Ms. Simmons is currently $325 per hour. This rate is significantly higher than previous awards to either attorney, but is still within the bounds of market rates awarded to civil rights litigators with similar experience in recent cases.

### ii. Hours Reasonably Expended

The District argues that the hours expended by Ms. Poulin and Ms. Simmons were unreasonable, duplicative, and "allow no reduction based on the partial decree of success obtained." *Doc. 155* at 6. Attorney fees under the IDEA may be reduced when "the time spent and legal services furnished were excessive considering the nature of the action or proceeding[.]" 20 U.S.C. § 1415(i)(3)(F). Determining whether the hours spent litigating a

11

case are reasonable requires determining whether expended hours were "'necessary' under the circumstances." *Robinson*, 160 F.3d at 1281. Among factors for a court to consider in determining reasonable fees are

> (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers.

*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)).

The District identifies no specific hours that would not ordinarily be charged to a paying client or that are subject to reduction as unnecessary. Instead, the District argues that it was generally unnecessary to have two attorneys prepare for and participate in the due process hearing before DPHO Yohalem and draft the proposed findings of fact that were later submitted to her. *Doc. 155* at 12. The District asks the Court to reduce the hours spent on these tasks by half. *Id.* While the number of attorneys utilized is certainly relevant in determining an award of fees, *see Case*, 157 F.3d at 1250, the Court is not persuaded that such a reduction is warranted. Close examination of the billing records submitted by Ms. Poulin and Ms. Simmons shows that their pre-hearing efforts were directed at different tasks. Whereas Ms. Simmons focused on the preparation of R. M-G's expert witness and her opening statement, *Doc. 148-2* at 2-3, Ms. Poulin's efforts appear to have been focused on the other witnesses presented at the hearing. *Doc. 148-4* at 4-6. Thus, the number of hours spent preparing for the hearing was not duplicative. While the same cannot be said of the attorneys' presence at the hearing and joint work on the proposed findings and conclusions, the mere fact that two attorneys worked on the case

12

rather than one is not enough to merit reduction of the fee award. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th Cir. 1998) ("We note that time spent by two attorneys on the same general task is not per se duplicative. Careful preparation often requires collaboration and rehearsal.") (quoted authority omitted).

The Court further finds that R. M-G's overall success before DPHO Yohalem and this Court merits a full award of the hours requested. While it is true that "[w]hether an award of attorney's fees is reasonable depends, in part, upon the degree of success obtained by the plaintiff[,]" *Urban*, 89 F.3d at 729 (citing *Hensley*, 461 U.S. at 436), "when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award." *Robinson*, 160 F.3d at 1283. "Instead, a court should focus on the 'significance of the overall relief' that the prevailing party has won: '[t]he result is what matters.'" *Id.* (quoting *Hensley*, 461 U.S. at 435); *see also Jane L.*, 61 F.3d at 1511 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . .") (quoting *Hensley*, 461 U.S. at 435-36).

R. M-G's results in this case were excellent. She prevailed on all but one of her claims before DPHO Yohalem and, more importantly, achieved the significant victory of securing for A.R. the services of a qualified TVI for the coming years. R. M-G also secured compensatory education services and materials and equipment for A.R. that the District failed to provide. The only real findings made against R. M-G were that A.R. was not

13

denied a FAPE for roughly a month before his TVI resigned and that the District's refusal to permit A.R. to take his Apex home was not retaliatory. In these circumstances, separating out attorney fees associated with R. M-G's unsuccessful contentions before DPHO Yohalem is nearly impossible and would be meaningless, as those unsuccessful claims do not detract from the significant relief she attained. Furthermore, this Court upheld DPHO Yohalem's findings in their entirety; thus, R. M-G completely prevailed on the merits of the District's appeal. In these circumstances, the Court is unwilling to reduce the requested fee based on what the District characterizes as "the partial degree of success obtained."

### C) Costs

"Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate." *Case*, 157 F.3d at 1257 (citing *Ramos*, 713 F.2d at 559). "The attorneys requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled." *Id.* The District does not challenge the appropriateness of the costs claimed by R. M-G, with the exception of the charges Ms. Simmons incurred for Westlaw and Pacer access. *See Doc. 155-1* at 6. However, costs for Westlaw access were awarded by Judge Herrera in *Morrison* and the same have been held recoverable in civil rights cases. *Morrison*, CIV 12-0143 JCH/RHS, Doc. 65 (D.N.M. September 23, 2015); *see, e.g.*, *Case*, 157 F.3d at 1257-58 ("the parties do not dispute that fax and Westlaw charges are expenses normally itemized and billed in addition to the hourly rate."); *Godinet v. Mgmt. & Training Corp.*, 182 F. Supp. 2d 1108, 1114 (D. Kan.

14

2002) *aff'd, Godinet v. Mgmt. & Training Corp.*, 56 F. App'x 865 (10th Cir. 2003) (citing *Case* and allowing the recovery of Westlaw charges). The Court finds no reason to conclude that PACER expenses are not also recoverable, as they have been accepted in other fee contexts. *See, e.g.*, *Mattingly v. Astrue*, CIV 08-409 RAW, 2010 WL 3075101, at *2 (E.D.Okla. Aug. 3, 2010) (unpublished) (awarding Pacer expenses). Accordingly, the Court will award all of R. M-G's requested costs.

### D) Simmons' Fees for Litigating the Motion and Fees for Paralegal Work

R. M-G seeks Ms. Simmons' attorney's fees for preparing the instant Motion. She claims 8.2 hours worked at a rate of $250 per hour for a total of $2,050 in fees. *Doc. 148* at 25. The District asserts that this fee request "appears reasonable." *Doc. 155* at 13. While not specifically requested in the body of the Motion, R. M-G also submits a bill for paralegal time which, including gross receipts tax, totals $144.70. *Doc. 148-2* at 5. The District does not dispute this time. *Doc. 155* at 4. The Court will accordingly award these additional amounts to R. M-G.

### III. Conclusion

This Court is cognizant that the amount of attorney fees and costs awarded in these consolidated cases will constitute a significant burden on the District. The Court notes, however, that the District has vigorously opposed virtually every attempt by R.M-G to vindicate her child's rights under the IDEA and thereby necessitated the expenditure of these fees and costs. Perhaps in the future, the District will more carefully consider its obligations to provide a FAPE to each student at the outset and spend its resources on meeting those obligations rather than incurring the costs attendant to litigation.

Wherefore,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Attorney's Fees for NMPED DPH 1213-36 and for defending the District's appeal in CIV 13-0755 KBM/KK (*Doc. 148*) is **granted in part**. R. M-G is hereby awarded attorney's fees and costs in the amount of **$153,813.39**, broken down as follows:

| | |
|---|---|
| Debra Poulin IDEA Fees | $71,971.04[3] |
| Nancy Simmons IDEA Fees | $77,788.64[4] |
| Nancy Simmons Motion Fees | $2,197.34[5] |
| Debra Poulin Costs | $1,278.77 |
| Nancy Simmons Costs: | $ 432.90 |
| Nancy Simmons Paralegal time | $144.70 |
| **TOTAL:** | **$153,813.39** |

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent of the Parties

---

[3] The award for Ms. Poulin is 206.6 hours for the case multiplied by $325 per hour, which equals $67,145.00 in total fees plus gross receipts tax of $4,826.04 (both attorneys used a Gross Receipts Tax rate of 7.1875%, which is the rate for Albuquerque. *See* <http://www.tax.newmexico.gov/gross-receipts-tax-historic-rates.aspx>), for a total of $71,971.04.

[4] The award for Ms. Simmons is 223.3 hours for the case multiplied by $325 per hour, which equals $72,572.50 in total fees, plus gross receipts tax of $5,216.14, for a total of $77,788.64.

[5] The award for Ms. Simmons is 8.2 hours multiplied by $250 per hour, which equals $2,050.00 in fees, plus gross receipts tax of $147.34, for a total of $2,197.34.